STONE, J.
Amanquiton appeals a final judgment of dismissal entered in favor of Jonny Peterson, a foreign corporation, and Partenreed-eri M.S. “Kerstin”, a foreign corporation (collectively “Peterson”). We affirm.
Amanquiton, a Philippine seaman, was employed by Peterson and injured aboard the M/V Kerstin, a German container ship owned by Peterson. Amanquiton filed suit against Peterson under the Jones Act, 46 U.S.CApp. § 688.
The complaint against Peterson was served on Teemarine Lines, Inc., a Miami corporation that had “time chartered” the ship from Peterson at the time of the accident. The case proceeded to jury trial on the issue of damages. The jury awarded Amanquiton $900,000 and final judgment was entered against Peterson in that amount.
Peterson filed a post-trial motion for new trial or rehearing and during the hearing on the motion, the question of subject matter jurisdiction under the Jones Act was addressed and memoranda were submitted to the trial court on that issue. Peterson argued that the court lacked jurisdiction to award damages to a Philippine seaman, employed by a German national as a seaman upon a German flag vessel, employed under a Philippine Over *114 seas Employment Administration contract, for an injury which took place in Jamaica.
The trial court granted Peterson’s motion to dismiss on the grounds of void service and lack of Jones Act jurisdiction. The court vacated the final judgment, and entered a judgment in favor of Peterson. We do not re-visit the personal jurisdiction issue which was resolved adversely to Peterson in an earlier non-final appeal[1] of this case, as we conclude that the trial court did not err in dismissing for lack of subject matter jurisdiction under the Jones Act.
The issue of subject matter jurisdiction may be raised at any time. Partridge v. Partridge, 790 So.2d 1280, 1284 (Fla. 4th DCA 2001); Taylor v. Sieberb, 615 So.2d 800, 801 (Fla. 1st DCA 1993). Although state courts are authorized to entertain cases filed under the Jones Act, the United States Supreme Court has limited the subject matter jurisdiction[2] of both federal and state courts to hear Jones Act claims to cases in which a sufficient nexus with the United States is present to warrant invoking the court’s jurisdiction. Haave, 630 So.2d at 624. A court’s determination as to whether a sufficient nexus exists is decided by considering the totality of the circumstances. Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 310, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). For guidance as to the sufficiency of such nexus, the Supreme Court outlined a list of non-exclusive factors to be considered in each case: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant ship owner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. Rhoditis, 398 U.S. at 308, 90 S.Ct. 1731. The Court recognized that there may also be other factors, depending on the circumstances of each case, such as the ship owner’s base of operations. Id. at 309, 90 S.Ct. 1731; see also Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).
We conclude that Amanquiton has failed to demonstrate that the trial court erred or abused its discretion in dismissing the case for lack of subject matter jurisdiction. Initially, we note that Amanquiton did not argue at trial, nor is it asserted on appeal, that the evidence was insufficient to determine subject matter jurisdiction or that any further evidentiary hearing needed to be held in order to resolve the jurisdictional issues. Applying the Rhoditis factors to this case shows that Amanquiton was injured while the ship was in the waters off Jamaica, the Kerstin is of German registry, Amanquiton is a domiciliary and citizen of the Philippines, Peterson has no apparent ties to the United States, the employment contract was made in the Philippines and pursuant to Philippine law, the contract provides that the rights and obligations of the parties are to be governed by the laws of the Philippines and that the Philippine Overseas Employment Agency or the National Labor Relations Commission would have original and exclusive jurisdiction over all disputes and con *115 troversies. Amanquiton, as a Philippine citizen, clearly has access to the Philippine courts and has already received compensation for this injury in the Philippines under the terms of the employment contract and a settlement agreement and there are no facts presented that would cause this court to seek application of Florida law.
Furthermore, Peterson’s base of operations is Germany. In fact, the only link that the vessel had with Florida or the United States was through the Tecmarine time charter. Although there is some minimal evidence of a Florida “nexus,” in that the time charterer is located here and the ship has made some stops at Florida ports, the trial court concluded that on this record there is no evidence that Peterson had “substantial and continuing contracts” with Florida such as would counter-balance the court’s weighing of the above factors. See Haave, 630 So.2d at 624. In Haave, the defendant had an office and registered agent in Florida and made extensive use of U.S. and Florida seaports. Furthermore, the plaintiff had been a domiciliary of Florida for several years. Id.
Unlike Haave, there is no demonstration here of substantial and continuing contacts that outweigh a balancing of the Rhoditis factors. There is only evidence that the ship made two stops in Fort Lauderdale in September 1996, and that it made another stop in Fort Lauderdale when it went off hire in November 1996. Although Aman-quiton infers that there must have been other visits over a period of years during which Peterson did business with Tecma-rine that might amount to substantial contact, he has provided no evidence of such contacts. See Baydar v. Renaissance Cruises, Inc., 35 F.Supp.2d 916, 917 (S.D.Fla.1999)(recognizing that burden is on party asserting jurisdiction to show that court does, in fact, have jurisdiction).
The lack of evidence of substantial contacts also distinguishes this case from Rojas v. Kloster Cruise, A/S, 550 So.2d 59 (Fla. 3d DCA 1989), in which the Third District found “overwhelming economic and commercial contacts between the vessel and its owner and the United States-including the facts that this country is the sole port of embarkation and disembarkation for all its business, the exclusive source of its income, and the location of the predominant, if not the only, base of its day-to-day operations.” Id. at 61. In its opinion, the court produced an extensive list of operational aspects that were present in the United States. Id. Here, in contrast, there is no evidence of overwhelming economic and commercial contacts with Florida or the United States. Amanquiton has not cited to, nor has this court found, any authority for the proposition that a time charter relationship is enough to constitute substantial contacts. The mere existence of a United States base of operations does not, without more, create jurisdiction. See Baydar, 35 F.Supp.2d at 918.
Thus, based on the factors as outlined by the Supreme Court, the trial court did not err or abuse its discretion in deciding that Peterson did not have a sufficient nexus with Florida or the United States to confer Jones Act jurisdiction.
Therefore, the judgment is affirmed.
GROSS and HAZOURI, JJ., concur.

. See Peterson v. Amanquiton, 727 So.2d 942 (Fla. 4th DCA 1998).

. In Hellenic Lines Limited v. Rhoditis, 398 U.S. 306, 308, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Court recognized the issue as one of jurisdiction. Other courts have followed the Court’s lead in treating the issue as one of subject matter jurisdiction." See Baydar v. Renaissance Cruises, Inc., 35 F.Supp.2d 916 (S.D.Fla.1999); Haave v. Tor Husfjord Shipping A/S, 630 So.2d 623 (Fla. 3d DCA 1993); Rojas v. Kloster Cruise, A/S, 550 So.2d 59 (Fla. 3d DCA 1989); Valverde v. Klosters Rederi A/S, 294 So.2d 101 (Fla. 3d DCA 1974).